**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

B.D., on behalf of herself and all others similarly
situated,

                Plaintiff,

        v.                             **JURY TRIAL DEMANDED**

NEW YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT; and
MARIA TORRES-SPRINGER, in her official
capacity as Commissioner for the New York City
Department of Housing Preservation and
Development,

                Defendants.

## <u>COMPLAINT</u>

Plaintiff B.D., by her attorneys, and on behalf of all others similarly situated, alleges as

follows:

## PRELIMINARY STATEMENT

1.     This class action challenges the New York City Department of Housing

Preservation and Development's unlawful and devastating policy, pattern, and/or practice of

excluding domestic violence survivors from Section 8 voucher bifurcation and/or termination

hearings that determine whether or not a survivor is able to stay in their home.

2.     Domestic violence in the United States is a public health and human rights crisis.

Across the country, approximately one third of women have suffered from domestic violence.

New York State is no exception.  Women in New York have reported experiencing domestic

violence in their lifetime at a similar alarming rate.

3.      In 2017 alone, the New York City Police Department received reports of over 100,000 incidents of intimate partner domestic violence.  *See* Mayor's Office to Combat Domestic Violence:  2017 Annual Fact Sheet, https://wwwl.nyc.gov/assets/ocdv/downloads/pdf/ocdv-fact-sheet-2017.pdf.

4.      For many individuals in abusive domestic relationships, the actions of an abuser force the survivor to make a difficult choice:  remain in the home, or flee the abusive relationship.

5.      This choice is particularly challenging for a low-income survivor living with their abuser, especially when the couple occupies a housing unit that benefits from government-administered rental assistance.  Housing subsidies are limited in availability.  A low-income survivor who decides to leave an abusive relationship faces the substantial risk of not being able to secure government assistance for a new housing unit.

6.      Domestic violence is a significant cause of housing instability and homelessness. In New York City, the Department of Homeless Services reports that, among the families that it found eligible for entry to a shelter, twenty-three percent of families were eligible due to domestic violence.  *See* New York City Independent Budget Office, Fiscal Brief:  The Rising Number of Homeless Families in NYC, 2002-2012, at 7 (November 2014), https://ibo.nyc.ny.us/iboreports/2014dhs.pdf.

7.      As a result, fear of homelessness often deters survivors from leaving abusive relationships.

8.      Federal law seeks to protect survivors of domestic violence, the majority of whom are women, from the collateral consequences of abusive relationships.  Congress enacted the

Violence Against Women Act ("VAWA") in 1994 to protect women against injustices that survivors often endured.

9.      In its 2005 reauthorization of the Violence Against Women Act, Congress amended the statute to protect survivors against displacement from their homes.  Under this amendment, Congress authorized the owner of a housing unit benefitting from government assistance to bifurcate a lease.  This procedure allows the owner of the unit to evict the abuser while allowing the survivor to remain in the home, and therefore enables the survivor to continue benefitting from rental assistance connected to the unit.  Bifurcation thus protects low-income survivors from the Hobson's choice between homelessness or continuing to endure an abusive relationship.  The 2005 amendment also protected survivors against discriminatory treatment based on the actions of the abuser, and provided survivors with defenses against eviction.

10.      Under the Violence Against Women Reauthorization Act of 2013, Congress retained these procedures, and has further reinforced Congress's goals of allowing survivors to remain safely in their homes.  The 2013 Reauthorization requires a landlord or public housing agency to provide a survivor and any other remaining tenants an opportunity to establish eligibility for a housing program when the abuser is evicted, and when the abuser was previously the only tenant in the household eligible to receive assistance under the housing program.

11.      By creating a bifurcation procedure through which a domestic violence survivor may become the head of household under a lease, and thereby remain the beneficiary of public assistance connected to the unit, federal law provides the survivor with a property interest in the housing subsidy.

12.      Defendants operate a federal housing subsidy program, known as the Section 8 Housing Choice Voucher program.  Through the Section 8 program, a household may lease a

unit from a private owner, and Defendants use federal funds to pay for a portion of the unit's rent.  Defendants calculate the rent contributions based on a household's income, allowing low-income households to secure housing that would otherwise be difficult or impossible to afford.

13.     While Section 8 allows there to be co-heads of households for partners or spouses, perpetrators of domestic violence often list only themselves as the "head of household" on a Section 8 voucher, thereby reinforcing their control over and ability to inflict further abuse upon the survivor.

14.     When survivors have reported instances of domestic violence to Defendants, and have sought termination of assistance to the abuser and bifurcation of the lease, Defendants (rightfully) provide the abuser due process rights, including official notice of the bifurcation hearing and an opportunity to be heard at the hearing.

15.     Defendants do not, however, provide similar due process rights to the survivors of domestic violence.  They do not formally notify the survivor of domestic violence of the bifurcation hearing or allow the survivor the opportunity to be heard at the hearing.  This policy, pattern, and/or practice violates survivors' due process rights.

16.     By denying survivors the same due process rights as their abusers, Defendants also engage in unlawful discrimination.  Women suffer domestic violence at significantly higher rates than men.  While one in four women have experienced domestic violence that had a related impact on their lives, only one in ten men have had a similar experience.  *See* National Center for Injury Prevention and Control, National Intimate Partner and Sexual Violence Survey:  2015 Data Brief – Updated Release 7 (November 2018), https://www.cdc.gov/violenceprevention/

pdf/2015data-brief508.pdf.[1]  Defendants' policy, pattern, and/or practice thus denies women who are survivors of domestic violence access to housing opportunities on the basis of sex.

17.    Defendants' policies, pattern, and/or practices have placed survivors at risk of losing their housing assistance and becoming homeless.

18.    Plaintiff B.D. is one of these survivors.

19.    Plaintiff B.D. is a 59-year-old survivor of domestic violence who lives in an apartment that was subsidized by a federal Section 8 voucher, administered by HPD.

20.    In 2015, Plaintiff obtained an Order of Protection against her abuser, her husband, who was the head of household on their voucher.  Plaintiff provided Defendants documentation of the abuse, including a Certification of Domestic Violence, Dating Violence or Stalking (HUD Form 91066), and requested bifurcation of her lease.

21.    Defendants failed to provide Plaintiff with official notice of the bifurcation hearing or to otherwise communicate with her with respect to her request for bifurcation.

22.    Defendants held a hearing to determine whether to terminate the abuser's Section 8 assistance, allowing Plaintiffs abuser to testify while excluding Plaintiff from the proceeding entirely.

23.    Not surprisingly (given that only Plaintiffs abuser was allowed to appear and present evidence at the bifurcation hearing), Defendants denied Plaintiffs request to terminate the abuser's Section 8 voucher, and therefore did not transfer the voucher to Plaintiff.

---

[1] The National Center for Injury Prevention and Control defines domestic violence with a related impact as including incidents in which the survivor experienced any of the following: "being fearful, concerned for safety, any post-traumatic stress disorder symptoms, injury, need for medical care, need for housing services, need for victim advocate services, need for legal services, missed one day of work or school, and contacting a crisis hotline." *Id.* at 133.

24.    As of April 30, 2018, HPD stopped paying rental assistance to Plaintiffs landlord.

25.    As a result of Defendants' discriminatory actions and violation of Plaintiff s due process rights, Plaintiff can no longer afford to remain in her apartment and is at risk of homelessness.

26.    By failing to provide Plaintiff and similarly situated domestic violence survivors an opportunity to be heard, HPD deprives survivors of their due process rights, and unlawfully discriminates against female survivors of domestic violence on the basis of sex.

27.    Defendants' exclusion of survivors of domestic violence from hearings related to domestic violence allegations, including bifurcation hearings, constitutes Defendants' regular policy and/or practice.

28.    Plaintiff B.D., on behalf of herself and all similarly situated survivors of domestic violence, brings this action pursuant to the Fourteenth Amendment to the U.S. Constitution and the Fair Housing Act, seeking declaratory and injunctive relief and damages.

## JURISDICTION AND VENUE

29.    This court has jurisdiction over Plaintiffs Fourteenth Amendment claims pursuant to 42 USC §§ 1983 and 1988, and 28 U.S.C. §1331.

30.    This court has supplemental jurisdiction over Plaintiffs City law claims pursuant to 28 U.S.C. § 1367.

31.    Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 *et seq*.

32.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b).  The Eastern District of New York is the judicial district where the apartment in question is located, and where the facts giving rise to the instant claims occurred.

6

## PARTIES

33.     Plaintiff B.D. ("B.D." or "Plaintiff') is a 59-year-old domestic violence survivor. She currently resides at in Brooklyn, NY.

34.     Defendant MARIA TORRES-SPRINGER is the Commissioner of the New York City Department of Housing Preservation and Development.

35.     Defendant NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT is an administrative department of the City of New York with its principal place of business at 100 Gold Street, New York, New York 10038.

36.     Defendant MARIA TORRES-SPRINGER, in her official capacity, and Defendant NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT (collectively "HPD") have as their mission the promotion of quality housing and diverse neighborhoods through loan and development programs for new affordable housing and preservation of the affordability of existing housing stock and are charged with the enforcement of housing quality standards.

37.     In addition to these and other duties, HPD administers a Section 8 program, known as the HPD Housing Choice Voucher Program.  The Section 8 program provides federal subsidies to assist eligible low-income families in renting affordable housing.  Families participating in the Section 8 program pay a reasonable share of their income toward rent, which normally is thirty percent of the household's total household income.  HPD pays the remaining rent directly to the landlord, within specified limits.

## STATUTORY, AND REGULATORY SCHEME

## Title VI of the Violence Against Women Act, amended as Violence Against Women Reauthorization Act of 2013

38.     In 2013, Congress reauthorized the Violence Against Women Act, recognizing that survivors of domestic violence often face housing discrimination and risk homelessness when seeking to leave abusive situations.  Congress further recognized that survivors were often evicted after repeated calls to the police for domestic violence incidents and disturbances to other tenants.  These victims faced "doubt victimization" by their abusers and their landlords.

39.     Title VI of the Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, 127 Stat. 54 (March 7, 2013) (hereinafter "VAWA"), states:

> No person may deny assistance, tenancy, or occupancy rights to housing assisted under a covered housing program to a tenant solely on the basis of criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking that is engaged in by a member of the household of the tenant or any guest or other person under the control of the tenant, if the tenant or an affiliated individual of the tenant is the victim or threatened victim of such domestic violence, dating violence, sexual assault, or stalking.

42 U.S.C. § 14043e-1 1(b)(3)(A).

40.     VAWA allows Public Housing Authorities such as HPD to bifurcate a lease. Specifically VAWA states:

> A housing program may bifurcate a lease for the housing in order to evict, remove, or terminate assistance to any individual who is a tenant or lawful occupant of the housing and who engages in criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking against an affiliated individual or other individual, without evicting, removing, terminating assistance to, or otherwise penalizing a victim of such criminal activity who is also a tenant or lawful occupant of the housing.
>
> [ • • • ]

If public housing agency or owner or manager of housing assisted under a covered housing program evicts, removes, or terminates assistance to an individual under clause (i), and the individual is the sole tenant eligible to receive assistance under a covered housing program, the public housing agency or owner or manager of housing assisted under the covered housing program shall provide any remaining tenant an opportunity to establish eligibility for the covered housing program.

42 U.S.C. § 14043e-ll(b)(3)(B)(i)-(B)(ii).

**Implementation of VAWA by HPD's Housing Choice Voucher Administrative Plan**

41.     HPD has promulgated a Housing Choice Voucher Administrative Plan.  The Plan must conform to the purposes and strictures of federally-mandated tenant protections, including VAWA.  *See* Housing Choice Voucher (Section 8) Administrative Plan, April 17, 2018 ("HCV Administrative Plan").

42.     According to the HCV Administrative Plan, "HPD administers the Housing Choice Voucher program in conformance with 24 CFR Part 5, 903, 982 and 985, the Housing Act of 1937, the Fair Housing Act, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973 and its subsequent amendments, and Title II of the Americans with Disabilities Act. HPD affirmatively furthers fair housing in the administration of the HCV program."  HCV Administrative Plan § 1.1.

43.     Pursuant to HPD's Housing Choice Voucher Administrative Plan, "an applicant for or participant of housing assisted under a covered housing program may not be denied admission to, denied assistance under, terminated from participation in, or evicted from the housing on the basis that the applicant or tenant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, if the applicant or tenant otherwise qualifies for admission, assistance, participation, or occupancy."  HCV Administrative Plan § 2.5.1.

44.     Additionally, the Administrative Plan specifically states that, when deciding

9

whom to give the subsidy to in the event of a family breakup, "HPD will consider the role of domestic violence, dating violence, sexual assault, or stalking in the family breakup and follow [VAWA] policy when determining who will retain the subsidy." HCV Administrative Plan §5.1.4.1.

45. By implementing VAWA, these policies encourage survivors of domestic violence to come forward without fear of losing benefits.

46. Upon information and belief, when HPD receives information regarding alleged domestic violence, HPD commences a termination and/or bifurcation hearing.

47. The bifurcation process does not split the subsidy into two parts. Rather, HPD holds a hearing that determines whether the lease should be bifurcated, and which household member should retain the voucher.

48. The potential abuser is, naturally, given due process rights to contest the bifurcation. HPD provides the abuser with notice and an opportunity to be heard. At the hearing, the abuser may have an attorney or other representative present. In addition, the abuser may review HPD's file either at the hearing, or upon request, review the file prior to the hearing.

49. Based upon her personal experience, the research of the undersigned counsel, and upon information and belief, it is the policy, pattern, and/or practice of Defendants to not formally notify the survivor of domestic violence of the hearing or to allow the survivor an opportunity to be heard at the hearing. Rather, Defendants rely entirely upon the documentation that the domestic violence survivor submitted as part of the bifurcation request. The abuser is afforded an opportunity to speak; the survivor is not. This double standard is unlawful and jeopardizes the life and safety domestic violence survivors like Plaintiff.

**Title VIII of the Civil Rights Act of 1968, as amended**
**by the Fair Housing Amendments Act of 1988**

50.     Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act (hereinafter "FHA"), as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. § 3601 *et seq.,* states that "it shall be unlawful.. . [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of.. . sex." 42 U.S.C. § 3604(a).

51.     The Section further states that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of ... sex." 42 U.S.C. § 3604(b). Prohibited actions include "Evicting tenants because of their ... sex." 24 C.F.R. 100.60(b)(5).

52.     Title VIII further prohibits interference with any person in the exercise or enjoyment of rights guaranteed under Section 3604, among other provisions. 42 U.S.C. § 3617.

**The New York City Human Rights Law**

53.     The New York City Human Rights Law ("City HRL"), N.Y.C. Admin. Code § 8-101 *et seq.,* makes it an unlawful practice to discriminate against individuals in housing on the basis of sex. N.Y.C. Admin. Code § 8-107(5).

54.     The City HRL prohibits discrimination in public accommodations and provides:

> It shall be an unlawful discriminatory practice for any person, who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . . [b]ecause of any person's actual or perceived . . . gender . . . directly or indirectly . . . [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, facilities or privileges of the place or provider of public accommodation ....

11

N.Y.C. Admin. Code § 8-107(4)(a).

55.     Defendant HPD is a "public accommodation" within the meaning of the HRL, as "public accommodation" is defined to include "providers . . . of goods, services, facilities, accommodations, advantages or privileges of any kind, and places . . . where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available."  N.Y.C. Admin. Code § 8-102.

56.     Further, the City HRL, N.Y.C. Admin. Code § 8-101 *et seq.,* makes it an unlawful practice to discriminate against individuals in housing on the basis of the individual's actual or perceived status as a victim of domestic violence.  N.Y.C. Admin. Code § 8-107(27).

57.     The City HRL prohibits discrimination in housing accommodations and provides:

> It shall be an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation, constructed or to be constructed, or an interest therein, or any agent or employee thereof, because of any individual's actual or perceived status as a victim of domestic violence . . . to discriminate in the terms, conditions, or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith because of an actual or perceived status of said individual as a victim of domestic violence . . . .

N.Y.C. Admin. Code § 8-107(27)(e).

58.      Defendant HPD is a "housing accommodation" within the meaning of the HRL, as "housing accommodation," as used in subparagraph (e), is defined to include "publicly-assisted housing accommodations."  N.Y.C. Admin. Code § 8-107(27)(f).

59.     The HRL further states that "[i]t shall be an unlawful discriminatory practice for any person to . . . interfere with . . . or attempt to . . . interfere with any person in the exercise or enjoyment of. . . any right granted or protected" under the HRL. N.Y.C. Admin. Code § 8-107(19).

## STATEMENT OF FACTS

60.     Plaintiff, B.D., is a nearly sixty-year-old survivor of domestic violence.  She resides by herself in Brooklyn, New York.

61.     Plaintiff married her now ex-husband in 2004.  Their divorce was finalized  in April 2018.

62.     In 2014, B.D. and her then-husband moved into an apartment in Brooklyn, New York. Although they were both named as tenants on their lease, her husband was listed as the Head of Household on their Section 8 voucher administered by the Housing Preservation and Development Housing Choice Voucher Program.

63.     They received this voucher to help them move out of a New York City shelter.

64.     Throughout their relationship, B.D. suffered abuse at the hands of her husband, including verbal and physical assault, and threats to kill her.  Her husband was especially abusive when he was under the influence of drugs or alcohol.

65.     In September 2015, B.D.'s husband attacked her in their home with a knife.  After he was arrested, her husband pled to disorderly conduct charges and the case was sealed.

66.     B.D. obtained a final  order of protection against her husband, effective through January 24, 2018.  The order mandated that her husband permanently vacate their shared apartment.

67.     In October 2015, B.D. attempted to bifurcate the Section 8 subsidy.  She submitted documentation of her abuse to HPD Section 8, including a Certification of Domestic Violence, Dating Violence Or Stalking (HUD Form 91066).

68.     The HUD-91066 Form is the form prescribed under VAWA to "protect qualified tenants and family members of tenants who are victims of domestic violence . . . from being evicted or terminated from housing assistance based on acts of such violence against them."

69.     Despite having submitted the requisite forms and ample documentation of her abuse to HPD Section 8, B.D. never received a response to her request.

70.     The Legal Aid Society requested to review the tenant file under the Freedom of Information Law, but HPD Section 8 redacted almost all of the information contained in the file.

71.     However, documents found in the tenant file maintained by HPD Section 8 revealed that termination was recommended for B.D.'s husband as early as November 2015, but HPD did not address the issue until nearly three years later.

72.     At some point in 2018, HPD held a hearing on the issue of who should receive the Section 8 voucher. HPD claims that they received competing claims of domestic violence from B.D. and her husband.   Ultimately, HPD determined that her husband would retain use of the rent subsidy.

73.     There was a copy of the decision in the tenant file; however, it was completely redacted.

74.     Additionally, B.D. never received notice of such a hearing and was never informed of the outcome of the hearing, or information on how to appeal HPD Section 8's decision.

75.     In March 2018, HPD Section 8 sent B.D. a letter stating that as of April 30, 2018, the Section 8 subsidy being paid to her landlord would end.

76.     B.D., fearing losing her voucher, which would render her apartment unaffordable, sought assistance from The Legal Aid Society.

77.     The first time B.D. was alerted to HPD's decision that her ex-husband would maintain the subsidy, was after The Legal Aid Society sent a letter to HPD Section 8 on her behalf in June 2018.

78.     It appears that when there are competing claims of domestic violence, instead of conducting any due diligence into the allegations, HPD only allows the head of household to be heard and follows its family break up policy that provides that the original head of household retains the use of the voucher.

79.     In situations involving domestic violence it is common for the perpetrator to be the head of household as part of a pattern of control.

80.     Similarly to the experience of many other survivors of domestic violence living in a household with an HPD Section 8 subsidy, B.D. was not allowed to testify at the termination hearing, present documentary evidence, or cross-examine her batterer.  She never even received notice of when and where the termination hearing would be held, and was not provided information on how to appeal the decision.

81.     Courts in this Circuit have found that termination of Section 8 benefits constitute deprivation of a property interest that would entitle a person so procedural safeguards.

82.     InH.S'. v. *Been,* an HPD Section 8 voucher holder's wife, a survivor of domestic violence, submitted a HUD-91066 Form to request bifurcation of the voucher.  HPD held a termination hearing without notifying her or affording her the opportunity to be heard. In that case, the Court held that she had a sufficient property interest in her husband's Section 8 voucher to assert a due process claim.  *See A.S. v. Been,* 228 F.Supp.3d 315 (S.D.N.Y 2017).

83.     If B.D. had been afforded notice and an opportunity to be heard at the termination hearing, she would have had the opportunity to refute her ex-husband's allegations that he was

the victim of domestic violence, and to present facts regarding the pattern of control and abuse that she suffered for decades, including his arrest.

84.    The only notice B.D. received from HPD Section 8 regarding the termination of the subsidy was the letter dated March 20, 2018, which states, "that as of April 30, 2018, the Section 8 rent subsidy HPD pays. . . . will terminate." The letter did not provide any reasoning as to why the subsidy was being terminated or any means of appealing the decision.

85.    To date, B.D. has still not received a copy of the decision from the termination hearing.

86.    Sometime after her ex-husband found out that Section 8 was going to terminate the subsidy for the apartment, he began contacting B.D. again. In October 2018, B.D.'s ex-husband came to her apartment, tried to force the apartment door open, and demanded that she leave the apartment.

87.    B.D. called the police and obtained a new temporary order of protection against her ex-husband, effective through February 13, 2019.

88.    Since he was arrested in September 2015, her ex-husband has not resided in the apartment and B.D. has been solely responsible for paying her portion of the rent.

89.    Following the hearing, B.D. lost her Section 8 benefits. B.D. cannot pay her rent without the Section 8 subsidy. Her landlord has sued her in housing court, and she is now in danger of being evicted from her apartment, which would remove her from her community and almost certainly leave her homeless. Defendants' actions have therefore caused B.D. to experience ongoing harm.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and a class of all other individuals similarly situated.

91.     Pursuant to Federal Rule 23(b)(1) and (b)(2), Plaintiff brings Counts I and VI of this lawsuit as a class action on behalf of herself and the following class: "All individuals covered under VAWA who occupy, reside, or have moved out from or have been evicted from housing units receiving assistance under a Section 8 voucher administered by the New York Department of Housing Preservation and Development, and who have been or will be denied an opportunity to be heard at a termination or bifurcation hearing" (hereinafter "the Class").[2]

92.     Pursuant to Federal Rule 23(b)(1) and (b)(2), Plaintiff brings Counts II -VI of this lawsuit as a class action on behalf of herself and the following class: "All women covered under VAWA who occupy, reside, or have moved out from or have been evicted from housing units receiving assistance under a Section 8 voucher administered by the New York Department of Housing Preservation and Development, and who have been or will be denied an opportunity to be heard at a termination or bifurcation hearing" (hereinafter "the Sex Discrimination Class").

93.     Pursuant to Federal Rule 23(b)(3), Plaintiff brings Counts I and VI of this lawsuit as a class action on behalf of herself and the following class: "All individuals covered under VAWA who occupy, reside, or have moved out from or have been evicted from housing units receiving assistance under a Section 8 voucher administered by the New York Department of Housing Preservation and Development, and who have been denied an opportunity to be heard at a termination or bifurcation hearing" (hereinafter "the Retrospective Class").

---

[2] Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

94.     Pursuant to Federal Rule 23(b)(3), Plaintiff brings Counts II –VI of this lawsuit as a class action on behalf of herself and the following class:  "All women covered under VAWA who occupy, reside, or have moved out from or have been evicted from housing units receiving assistance under a Section 8 voucher administered by the New York Department of Housing Preservation and Development, and who have been denied an opportunity to be heard at a termination or bifurcation hearing" (hereinafter "the Retrospective Sex Discrimination Class").

95.     The members of the Class are so numerous that joinder of all members is impracticable.  Defendants administer Section 8 assistance for over 28,000 households composed of two or more individuals.  *See* DTR Section 8 General Program Indicators, Dec. 10, 2018.  According to the National Intimate Partner and Sexual Violence Survey ("the Survey"), in New York State approximately 21.6 percent of women and 9.2 percent of men have reported experiencing domestic violence with a related impact in their lifetime, with 4.1 percent of women in New York State reporting experiences with domestic violence with a related impact that occurred within the prior year.  National Center for Injury Prevention and Control, The National Intimate Partner and Sexual Violence Survey 131, 133, 147 (April 2017).[3]  These figures show that both the Class and the Sex Discrimination Class consist of well over forty members.

96.     Defendants' policy, pattern, or practice of not affording victims of domestic violence an opportunity to be heard before terminating Section 8 assistance to the victim and/or deciding to not bifurcate a Section 8 lease uniformly applies to all members of the Class so that questions of law and fact are common to all members of the Class.  These questions of law and

---

[3]  The report does not provide a 12-month prevalence statistic for men in New York State who experienced domestic violence with a related impact.

fact, include, without limitation:

a.  whether Defendants have a policy, pattern and/or practice of not providing survivors of domestic violence who are not listed as head of household on their Section 8 voucher with formal notice of a bifurcation hearing or the opportunity to be heard at the hearing;

b.  whether Defendants have deprived Plaintiff and the Class of their rights to due process by maintaining their policy, pattern, or practice;

c.  whether Defendants' policy, pattern, or practice constitutes disparate treatment of Plaintiff and the Class under the Fair Housing Act;

d.  whether Defendants' policy, pattern, or practice constitutes disparate treatment of Plaintiff and the Class under New York City Human Rights Law;

e.  whether, under the Fair Housing Act, Defendants' policy, pattern, or practice has a disparate impact on Plaintiff and the Class's access to housing by terminating Section 8 assistance without affording an opportunity to be heard; and

f.  whether, under New York City Human Rights Law, Defendants' policy, pattern, or practice has a disparate impact on Plaintiff and the Class's access to housing by terminating Section 8 assistance without affording an opportunity to be heard.

97.    The claims of Plaintiff are typical of the claims of the Class as all members of the Class are similarly affected by Defendants' policy, pattern, or practice, and the relief sought in this Complaint is for the benefit of Plaintiff and members of the Class.

98.    Plaintiff will fairly and adequately represent and protect the interests of the Class because there is no conflict between the claims of Plaintiff and members of the Class.

99.    Plaintiffs claims are typical of the claims of the Class, in the following ways, but

without limitation:  Plaintiff is a member of the Class, Plaintiffs claims arise out of the same policies, patterns, and practices that form the basis of the Class members' claims, Plaintiff has no conflicts of interest with the members of the class, and Plaintiff has suffered injuries similar to the members of the Class.

100.    Plaintiffs counsel is competent and experienced in litigating class actions and other complex litigation matters.

101.    Class certification under Fed. R. Civ. P. 23(b)(1) is appropriate because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants and adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of other members not parties to the individual adjudications.

102.    Class certification under Fed. R. Civ. P. 23(b)(2) is appropriate because Defendant's policy, pattern, and practice applies to the Class generally, and Plaintiff and the Class seek final injunctive and declaratory relief that will be appropriate with respect to the Class as a whole.

103.    Class certification under Fed. R. Civ. P. 23(b)(3) is appropriate because (a) questions of law and fact common to the class predominate over any questions that affect Plaintiff and members of the Class individually and (b) this proposed class action is superior to other methods for adjudicating this controversy.  The class action will allow a large number of individuals to simultaneously pursue their common claims in a single forum.

**CAUSES OF ACTION**

**Count One: Violation of Due Process (42 U.S.C. § 1983)**

**(On Behalf of Plaintiff, the Class, and the Retrospective Class)**

104.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

105.     42 U.S.C. § 1983 creates a cause of action on behalf of "any citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges or immunities secured by the Constitution and laws" against any person acting "under color of any statute, ordinance, regulation or usage."

106.     Defendants are "persons" acting "under color" of City law within the meaning of 42 U.S.C. § 1983.

107.     Under VAWA and HUD's implementing regulations, Plaintiff has a property interest in the Section 8 subsidy in question.

108.     Defendants deprived Plaintiff of this property interest without sufficient notice or a chance to be heard.  Providing Plaintiff with a proper, formal notice addressed to her would not have constituted a substantial burden for Defendants, as such notice was given to Plaintiffs abuser, who was given an opportunity to be heard.

109.     Providing Plaintiff with a chance to provide an affidavit, to testify, to present evidence, and/or to cross examine her abuser at the bifurcation hearing would not have constituted a substantial burden for Defendants, as Defendants allowed Plaintiffs abuser an opportunity to testify and be heard.

110.     Defendants have a policy, pattern, and/or practice of failing to afford victims of domestic violence an opportunity to participate in hearings in which their rights will be determined.

21

111.    Defendants have thus deprived Plaintiff of a property interest without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

112.    As a direct and proximate result of Defendants' acts and omissions complained of herein, Plaintiff has suffered and continues to suffer severe emotional distress and damages.

**Count Two:  Violations of the Fair Housing Act—Disparate Treatment (42 U.S.C. §3604)
(On Behalf of Plaintiff, the Sex Discrimination Class, and the Retrospective Sex**

**Discrimination Class)**

113.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

114.    Plaintiff is a female survivor of domestic violence.  As a woman, Plaintiff is a member of a protected class under the Fair Housing Act.

115.    Defendants' policy, pattern, and practice of offering an opportunity to be heard only to batterers and not survivors of domestic violence were made with knowledge of and/or reckless indifference to the fact that such policy, pattern and practice would primarily disadvantage women.

116.    Defendants were on notice of the fact that the vast majority of domestic violence survivors are women, and thus that any policy, pattern and/or practice which disproportionately disadvantages survivors of domestic violence would disproportionately disadvantage women.

117.    Defendants nonetheless implemented the policy, pattern, and practice complained of herein with full knowledge of the foreseeable discrimination against women which would result.

118.    Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiffs apartment and the award of the Section 8 subsidy to Plaintiffs abuser without meaningful participation from Plaintiff.

119.    Defendants' actions constitute discrimination against the Plaintiff on the basis of sex and gender contrary to the provisions of the Fair Housing Act.

### Count Three:  Violations of the Fair Housing Act—Disparate Impact *(42* U.S.C. §3604) (On Behalf of Plaintiff, the Sex Discrimination Class, and the Retrospective Sex Discrimination Class)

120.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

121.    Plaintiff is a woman and a survivor of domestic violence.

122.    As stated above, statistics show that women are overwhelmingly the victims of domestic violence.

123.    As a matter of policy, pattern, and/or practice, Defendant do not notify domestic violence survivors of when hearings will take place and do not provide a chance for domestic violence survivors to be heard.

124.    Defendants' policy, pattern, and/or practice thus has a predictable disparate impact on women.

125.    Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiffs apartment and the award of the Section 8 subsidy to Plaintiffs abuser without meaningful participation from Plaintiff.

126.    Defendants' actions constitute discrimination against the Plaintiff on the basis of gender contrary to the provisions of the Fair Housing Act.

**Count Four:  New York City Human Rights Law—Disparate Treatment (N.Y.C.
Admin. Code § 8-107).
(On Behalf of Plaintiff, the Sex Discrimination Class, and the Retrospective Sex**

**Discrimination Class)**

127.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this

Complaint as if fully set forth herein.

128.    Plaintiff is a woman and a survivor of domestic violence.

129.    Defendants' policy, pattern, and/or practice of offering an opportunity to be heard

only to abusers and not survivors of domestic violence were made with knowledge of and/or

reckless indifference to the fact that such policy, pattern, and practice would disadvantage

survivors of domestic violence who primarily are women.

130.    Defendants were on notice of the fact that the vast majority of domestic violence

survivors are women, and thus that any policy, pattern and/or practice which disproportionately

disadvantages survivors of domestic violence would disproportionately disadvantage women.

131.    Defendants nonetheless implemented the policy, pattern, and practice complained

of herein with full knowledge of the foreseeable discrimination against women which would

result.

132.    Defendants' discriminatory policies, patterns, and/or practice resulted in the

termination of the subsidy for Plaintiffs apartment and the award of the Section 8 subsidy to

Plaintiffs abuser without meaningful participation from Plaintiff.

133.    This constitutes discrimination against the Plaintiff on the basis of gender and her

actual or perceived status as a victim of domestic violence contrary to the New York City Human

Rights Law, N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(5)(a), and 8-107(27)(e).

134.    By operating the Section 8 program, Defendants are managers of a public

accommodation within the meaning of N.Y.C. Admin. Code § 8-107(4)(a).

135.     In operating the Section 8 program, Defendants, their agents and employees are persons who have a right to approve the rental or lease of a housing accommodation within the meaning of N.Y.C. Admin. Code §§ 8-108(27)(e) and 8-107(5)(a).

**Count Five:  Violations of New York City Human Rights Law—Disparate Impact tN.Y.C. Admin. Code § 8-107).**
**(On Behalf of Plaintiff, the Sex Discrimination Class, and the Retrospective Sex**

**Discrimination Class)**

136.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

137.     Plaintiff is a woman and a survivor of domestic violence.

138.     As stated above, statistics show that women are overwhelmingly the victims of domestic violence. As a matter of policy, pattern, and/or practice, Defendants do not notify domestic violence survivors of when hearings will take place and do not provide a chance for domestic violence survivors to be heard.

139.     Defendants' policy, pattern and/or practice has a predictable disparate impact on women and victims of domestic violence, sex offenses, and stalking.

140.     Defendants' discriminatory policies, patterns, and/or practice resulted in the termination of the subsidy for Plaintiffs apartment and the award of the Section 8 subsidy to Plaintiffs abuser without meaningful participation from Plaintiff.

141.     This constitutes discrimination against the Plaintiff on the basis of gender and her actual or perceived status as a victim of domestic violence contrary to the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(5)(a), and 8-107(27)(e).

142.     By operating the Section 8 program, Defendants are managers of a public accommodation within the meaning of N.Y.C. Admin. Code § 8-107(4)(a).

25

143.    In operating the Section 8 program, Defendants, their agents and employees are persons who have a right to approve the rental or lease of a housing accommodation within the meaning of N.Y.C. Admin. Code §§ 8-108(27)(e) and 8-107(5)(a).

**Count Six:  Declaratory Judgment—28 U.S.C. § 2201**
**(On Behalf of Plaintiff, the Class, the Retrospective Class, the Sex Discrimination Class, and the Retrospective Sex Discrimination Class)**

144.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

145.    This Court has the authority to issue a declaratory judgment pursuant to the Declaratory Judgment Act. Under 28 U.S.C. § 2201(a), "In a case of actual controversy within its jurisdiction . . . any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of final judgment or decree and shall be reviewable as such."

146.    This action presents a substantial, real, justiciable, and immediate controversy between the parties having adverse legal interests, such that declaratory relief is warranted.

147.    Absent declaratory relief, Plaintiff B.D. will suffer substantial hardship in that she will be subject to the deprivation of her Subject 8 housing subsidy without due process and will face risk of homeless.

148.    Accordingly, B.D. is entitled to a judgment declaring the Defendants' discriminatory policy and practice of excluding her and other survivors from bifurcation hearings in violation of (a) Plaintiff and the Class members' rights to due process under the Constitution of the United States, and (b) Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.,* and its implementing regulations.

26

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court:

(1)     Enter a final judgment declaring that Defendants violated:

    a.     Plaintiff and The Class members' right to due process under the Constitution of the United States;

    b.     Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.,* and its implementing regulations;

(2)     Enter a preliminary and final, mandatory injunction requiring Defendants to reinstate Section 8 assistance to Plaintiff B.D., issuing Plaintiff an HPD Housing Choice voucher in her name, and requiring HPD to immediately reinstate payments to Plaintiffs landlord, leaving Plaintiff with a rent responsibility of $273;

(3)     Enter a preliminary and final, mandatory injunction requiring Defendants to implement a policy of notifying survivors of domestic violence, dating violence, or stalking of termination and/or bifurcation hearings, and allowing survivors to be heard at termination and/or bifurcation hearings;

(4)     Enter a preliminary and final, mandatory injunction requiring Defendants to implement a policy allowing both individuals in a couple to be named as co-head of household and establishing uniform standards for determining when individuals shall be listed as co-head of household;

(5)     Enter a final judgment awarding Plaintiff, the Retrospective Class, and the Retrospective Sex Discrimination Class actual, compensatory, and nominal damages for injuries and expenses incurred as a result of the preceding violations;

(6)      Allow Plaintiff and the Class reasonable attorney's fees, costs and disbursements

pursuant to 42 U.S.C. §§ 1988 and 3613, andN.Y.C. Admin. Code § 8-502; and

(7)      Grant such other and further relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff B.D. hereby demands a trial by jury to decide all issues so triable in this case.

Dated:   January 17, 2018                                THE LEGAL AID SOCIETY
         New York, New York

                                                         *Is*/ Judith Goldiner

                                                         THE LEGAL AID SOCIETY
                                                         Judith Goldiner
                                                         Attorney in Charge
                                                         Civil Law Reform Unit
                                                         Ellen Davidson, Of Counsel
                                                         Casey B. Rubinoff, Of Counsel
                                                         199 Water Street, 6th Floor
                                                         New York, NY 10038

                                                         WEIL, GOTSHAL & MANGES LLP

                                                         /s/ Steven A. Reiss
                                                         Steven A. Reiss
                                                         WEIL, GOTSHAL & MANGES LLP
                                                         767 Fifth Avenue
                                                         New York, NY 10153
                                                         Phone: (212)310-8174
                                                         Steven.Reiss@weil.com

                                                         /s/ Diane Sullivan
                                                         Diane P. Sullivan
                                                         WEIL, GOTSHAL & MANGES LLP
                                                         17 Hulfish Street, Suite 201
                                                         Princeton, NJ 08542
                                                         Phone: (609) 986-1120
                                                         Diane.Sullivan@weil.com

28